NEMAHA COUNTY BANK, APPELLANT, v. COUNTY BOARD OF
EQUALIZATION AND ASSESSMENT, APPELLEE.

FILED DECEMBER 26, 1918.  No. 20180.

Taxation: ASSESSMENT: BANK STOCK.  In making the assessment of
the total value of shares of stock for purposes of taxation, in a
banking institution, as provided for in section 6343, Rev. St. 1913,
as amended in chapter 108, Laws 1915, the assessor should in-
clude. all the property of the bank and assets of every description
at their true value.  Mortgage securities, mentioned in the sec-
tion, upon which the mortgagor has agreed to pay the tax, should
not be excluded;  nor should they be deducted from the total valu-
ation of the shares of capital stock, in arriving at the value of
each share which is the unit of taxation.

APPEAL from the district court for Nemaha county:
JOHN B. RAPER, JUDGE. *Affirmed as modified.*

*Lambert & Armstrong,* for appellant.

*Ernest F. Armstrong, contra.*

*L. M. Pemberton, amicus curiæ.*

CORNISH, J.

The inquiry is whether, in the assessment of the
shares of stock in a banking corporation, there should
be deducted from the total valuation of the shares
the real estate mortgage securities, forming part of
the bank's assets. The bank, plaintiff and appellant,
might say that the question would be more fairly put
as follows: Should such assets be considered at all by
the assessor in assessing the value of the shares of stock
to the owners thereof? In view of the constitutional
provision that all property must be taxed in proportion
to value, it is difficult to say that any of the property
of the bank shall not be "considered at all." If
considered in arriving at the value of shares, then, as a
matter of simple arithemetic, it must be either in-
cluded in or deducted from that total valuation of the
bank's assets, which, divided by the number of shares,
constitutes the value of each share.

Section 6343, Rev. St. 1913, as amended in chapter 108, laws 1915, prescribes the method of taxing banks. The assessor is required to determine "the true value of each share of stock," assessing it "as similar property belonging to other corporations and individuals" is assessed, taking into account its market value. The names of the owners of the stock should be shown. The bank is required to pay the taxes, having a lien upon the stock for the same. The section also contains a provision as follows: "Whenever any such bank, association or company shall have acquired real estate which is assessed separately, the assessed value of such real estate shall be deducted from the valuation of the capital stock of the association or company. *Provided,* mortgages, trust deeds and all other liens or interests in real estate less than a fee title and held as security for loans shall not be considered or assessed as part of the capital stock for purposes of taxation, and shall not be deducted from the capital, surplus or undivided profits." The last sentence of this quotation constituted the amendment of 1915.

Sections 6349-6353, Rev. St. 1913, enacted in 1911, provide for the taxation of real estate mortgages. They are declared to be an "interest in real estate for the purposes of assessment and taxation." Rev. St. 1913, sec. 6350. If the mortgagor agrees to pay the tax on the amount of the mortgage interest, then the mortgagee is not taxed thereon; otherwise, he is. In the instant case, the mortgages in controversy, held by the bank, contained provisions that the mortgagor should pay the tax.

Under the statute as it was from 1911 to 1915, we held that, mortgage securities being declared real estate, the assessor, in arriving at the true value of the shares of stock, should deduct from the total valuation of the (shares of) capital stock the amount of such securities held by the bank. *First Trust Co. v. Lancaster County,* 93 Neb. 792, 795. Following this deci-

sion the amendment above noted was passed in 1915. We are called upon to construe the meaning of this amendment.

The federal national bank act, while not bearing directly upon the issue, is instructive in the matter of interpretation. Under the federal decisions, national banks are regarded as agencies of the government, impossible to be taxed by the states except as taxation is permitted by the federal law. *State v. Fleming,* 70 Neb. 529, 536.; 3 U. S. S..A. 900; 6 Fed. St. Ann. 796, sec. 5219, and cases cited. The federal law permits taxation of the shares of stock to the stockholder, to be paid by the bank, and taxation of real estate owned by the bank to the bank itself. Taxation of the assets or capital stock of the bank to the bank is not permitted except in the case of real estate. For that reason an attempt by the state to tax mortgage securities to a national bank, if the federal courts would consider them as personal property, not real estate (as they probably would), would be contrary to the federal law. The states, wishing their local banking institutions to be upon as favorable a footing as national banks, have uniformly followed the federal law. In this state however, unlike other states we have never, in a strict sense, taxed real estate to the bank, as we might have done. When we have taxed real estate belonging to the bank, we have considered it as part of the value of the (shares of) capital stock otherwise assessed, and, accordingly, have deducted it from the total valuation of the shares in accordance with the direct provision of our statute above quoted.

In the absence of laws, state or federal, forbidding it, there is no reason in the law why the entire capital stock of the corporation, consisting of its cash, personalty or realty, may not be taxed to the bank, in addition to a tax on the shares to the owner. Shares of stock and capital stock represent different property rights and may be separately assessed. Shares of

stock represent a liability of the bank. The words "capital stock" in the statute mean shares of stock which are the unit of taxation. The context shows it, and such must have been the meaning, because, under the federal law, a tax on what is technically capital stock is not permitted.

Consistent with the law and our decisions, assessors heretofore, in assessing shares, have considered all the assets of the bank, "including all property and assets of every description." *First Trust Co. v. Lancaster County, supra.* How else could he do it under the Constitution and his oath to assess at the true value? If among the assets was included real estate to be assessed separately, he considered it as part of the shares of stock and deducted it from the total valuation. If not included, then how could it be deducted? When, as in *City Trust Co. v. Douglas County,* 101 Neb. 792, mortgages were taxed to the bank as real estate in another county, we held that the deduction must be made; otherwise, the shareholders would be taxed twice on the same property, thereby clearly holding that the mortgages had been considered and assessed as part of the shares of capital stock.

It may be urged that there is something fictitious in calling what is left after the deduction the true value of the stock. That is true, unless we consider the values deducted as part of the stock. So considered, no oath is broken and the stock is truly assessed.

And now comes the amendment of 1915, saying that such securities shall no longer "be considered or assessed as part of the capital stock for purposes of taxation," and then, to make it emphatic, adding the words, "and shall not be deducted from the capital, surplus or undivided profits." This means that these securities shall not be separately assessed as part of the capital stock, and hence no occasion for deduction arises. The intent is to forbid assessing them as real estate of the bank. When, however, they were so as-

sessed as in *City Trust Co. v. Douglas County, supra,* and the bank was made to pay the tax, the deduction must be made for two reasons: First. As stated in the opinion, not to do so would be double taxation on the shares, or, rather, an overvaluation of the stock, contrary to the constitutional provision of taxation in proportion to value. Second. As applied to a national bank, it would violate the federal law in not permitting taxation on personalty or capital stock, as such.

When, as in the instant case, no attempt is made to tax the bank or shareholders on the securities, no deduction should be made, and the action of the taxing authorities in Nemaha county should be upheld.

If it is contended that, equitably considered, the owners of the shares are the owners and proprietors of the bank, and that not to make the deduction amounts to double taxation, since the valuation of the shares includes the mortgages assessed to the mortgagor, it must be answered that, if this is double taxation, then such taxation is common. The two interests represent separate property rights and therefore each is taxable. This was always the rule until the mortgage tax law was enacted. It is the rule to-day, if the owner of a farm has given only a note for the remainder due upon it. A chattel mortgage is taxed against the holder and the mortgaged chattel against the owner. The farmer's implement is taxed against him and what he owes on it is taxed against the implement dealer. The owner of a bunch of fat hogs must pay taxes on their full value, even though he could show that the corn which fattened them was purchased from a neighbor, who had paid his taxes upon the corn. Objectionable double taxation occurs when the property assessed is overvalued. Banks have no good reason to complain. They deal in these securities voluntarily. This state has never attempted to tax the bank itself upon any of its property, not even its real estate. An individual cannot deduct his debts and liabilities from his assets

so as to be taxed on net worth alone, as these institutions may do. An individual cannot go into the banking business. A bank with $100,000 capital may have $1,000,000 from its depositors, which it is permitted to use without paying taxes thereon. Under the contrary rule, a bank, by investing its capital in these securities, might do a business from year to year and never pay a cent of taxes to the state. This is not consistent with the spirit, nor, we think, with the letter of our Constitution.

What we decide is that, in assessing shares of stock for taxation, everything that enters into value must be included, unless it has been separately assessed. In so deciding, we say nothing as to how mortgage securities should be assessed for taxation. It is the shares of stock which are being assessed. The mortgage security, owned by the corporation, is one thing; the share of stock, owned by the individual, is another and distinct thing. The corporation's right to resist taxation upon its mortgage securities, contrary to the mortgage tax statute, if it were attempted, is one thing; the right of an individual shareholder to resist taxation on his shares of stock, according to true value, is an altogether different thing. In legal contemplation, it is the shareholder and not the bank which is being taxed. We leave banks and individuals, as holders of mortgage securities, upon the same footing.

It appears that among the mortgages which were sought to be deducted there were some, amounting in all to $12,700.88, upon which the bank was liable to pay the taxes in the county where the land lay. These fall under the rule announced in *City Trust Co. v. Douglas County, supra,* and hence the assessor should have deducted this amount from the value of the stock.

The judgment of the district court is modified so as to require the reduction of the assessed value to the extent of $12,700.88, and is affirmed as thus modified.

AFFIRMED AS MODIFIED.

SEDGWICK, J., dissenting.

I think that there are matters in the decision in this case that may mislead those whose interests are affected, and may cause difficulty in applying the law in the future.

"Double taxation is common," but it is always avoided if practicable. Prior to the act of 1911, the farmer who could not make full payment for his farm was compelled to mortgage it. He still paid taxes on the full value of his farm, although he virtually owned only a part interest therein. His creditor also paid taxes on the mortgage interest, and, of course, he added this tax to the rate of interest he exacted on the loan. This was double taxation on the farmer who paid taxes on the value of the farm, and paid an additional interest equal to the tax on the mortgage. As a mortgage is a conveyance of real estate for a specified purpose and is an interest in real estate, and made a matter of public record the same as an unconditional deed, it was thought that this double taxation might be avoided, and the act of 1911 (Laws 1911, ch. 105), entitled "An act to provide for the taxation of mortgages of real property and to prevent double taxation on encumbered property in the state," was enacted for that purpose. It provides: "The words 'real property' 'real estate,' 'and lands,' shall include all property a conveyance whereof may be recorded by a register of deeds or county clerk under existing laws" (section 1); and that any recorded instrument conveying or retaining an interest in real estate should be regarded as a mortgage. It further provides: "A mortgage on real estate in this state is hereby declared to be an interest in real estate · for the purposes of assessment and taxation. The amount and value of any mortgage upon real estate in this state shall be assessed and taxed to the mortgagee or his assigns, and the taxes levied thereon shall be a lien on the mortgage interest; and the excess in value of the real estate above the mort-

gage or mortgages thereon shall be assessed and taxed to the mortgagor or owner of the premises and be a lien on the owner's interest." Section 2. If the land is sold for taxes, "the holder of either the interest of the mortgagor or mortgagee may redeem from such sale the interest sold; and the amount paid in redemption shall be treated and cause the same rights to accrue in favor of the party making the payment as if payment had been made before sale." Section 2. The proper county officer shall "examine the records of mortgages filed, and make a record in the assessment book against the land covered thereby, of any mortgages and the amount of. such mortgage and the name of the mortgagee, or assignee. The assessor shall at the time the property is assessed, assess the mortgage interest and the value of the real property above the mortgage interest separately. * * * Provided, that the total assessed value of any real property, including the interest of the mortgagor and mortgagee, shall not be changed excepting when all the real property of the county is assessed, unless the value of said property is changed by reason of a change in the improvements thereon. * * * When it is provided and agreed in any mortgage, that the mortgagor shall and will pay the tax levied upon the mortgage, or the debt secured thereby, that such assessor or county clerk shall not enter said mortgage for separate assessment and taxation, but both interests shall be assessed and taxed to the mortgagor or owner of the property mortgaged." Section 3. "Mortgages on lands in this state filed on and after said date (July 1, 1911) shall not be taxed in any other manner than herein provided." Section 5.

The suggestion that "an attempt by the state to tax mortgage securities to a national bank, if the federal courts would consider them as personal property, not real estate (as they probably would), would be contrary to the federal law," is confusing, since

a mortgage is a deed of real estate executed with all the formalities of any deed, and entitled to record as such. If state laws cannot tax such interests in land as real estate, there must be some principle in the mind of the court that is not made clear.

Section 6343, Rev. St., 1913, provided for the assessment of the property of banks and similar institutions, and chapter 108, Laws 1915, amended that section. The change related only to "interests in real estate less than a fee title." It did not repeal nor refer to the act of 1911, which provided specifically how such interests should be taxed, and that they "shall not be taxed in any other manner than herein provided." Therefore, it must not be considered to amend or change the former act, nor to make an unconstitutional attempt to do so, if it is capable of a construction either auxiliary to or in harmony with that statute. In construing these two statutes, we are limited to the language of the statutes themselves, and if there are ambiguities we may consider the record of their enactment. We cannot consider uncertain and possibly interested reports as to what certain members of the legislature then thought the effect and result of their legislation might be. The former act provided specifically (section 3) that the interest conveyed by the mortgage, and of course the remaining estate, should both be taxed in the county where the land lay, and the tax thereon should be paid there. It is the only statute we have that does provide specifically for assessing and taxing them. The amendment does not attempt to provide for assessing or taxing them. It contains nothing but two negatives—that such interests in real estate "shall *not* be considered or assessed as part of the capital stock for purposes of taxation, and shall *not* be deducted from the capital, surplus or undivided profits." Laws 1915, ch. 108. This is in entire harmony with the former act. The tax is paid on these interests in another county, and if the purpose of the entire

legislation on the subject is to be accomplished to "provide for the taxation of mortgages of real property and to prevent double taxation on encumbered property in the state," they cannot be taxed "as a part of the capital stock," and should neither be counted as part of the capital stock for taxation nor deducted therefrom. The distinction between taxing real estate to the bank, and taxing it to the stockholders who own the bank and all of its assets, is confusing, especially in connection with the theory that, "in the absence of laws, state or federal, forbidding it, there is no reason in the law why the entire capital stock of the corporation, consisting of its cash, personalty, or realty, may not be taxed to the bank, in addition to a tax on the shares to the owner." Almost anything can be done "in the absence of laws" forbidding it. But our Constitution requires that "every person and corporation shall pay a tax in proportion to the value of his, her or its property and franchises." Const., art. IX, sec. 1. And the statutes we are construing forbid the taxation of such interests in land "in any other manner" than those statutes provide. The general provision of section 6343, Rev. St. 1913, as amended by the act of 1915, that the capital stock shall be listed by the assessor as assessed by him, and returns made as other returns are made, and the language of the exception expressed in the proviso added to the section that interests in real estate less than a fee title shall not be "assessed as part of the capital stock," nor deducted therefrom, are construed as requiring that such interest shall be assessed as a part of the capital stock. The reason suggested is that "assessors heretofore, in assessing shares, have considered all the assets of the bank, 'including all property and assets of every description.' * * * How else could he do it under the Constitution and his oath to assess at the true value? If among the assets was included real estate to be assessed separately, he considered it as part of the shares of stock and deducted it

from the total valuation. If not included, then how could it be deducted?'' This language seems to need explanation. To assess is to fix the valuation for taxation. The valuation returned by the assessor for taxation does not include the value of the real estate separately assessed, whether it is first included in the value of the shares and then taken out to find the value assessed, or is not included in the value of the shares and therefore not deducted. In neither case is real estate, which is assessed separately, assessed in the shares of stock.

It is also said: ''Shares of stock represent a liability of the bank. The words 'capital stock' in the statute mean shares of stock which are the unit of taxation. The context shows it, and such must have been the meaning, because, under the federal law, a tax on what is technically capital stock is not permitted.'' It is not made clear why real estate values must be assessed in shares of stock when ''under the federal law, a tax on what is technically capital stock is not permitted.'' When this statute requires that such property shall not be assessed as part of the capital stock, ''the words 'capital stock' in the statute mean shares of stock,'' and are not used technically by the legislature. But what is the difference between ''capital stock'' and ''shares of stock,'' either commonly or technically? Heretofore generally it has been considered that there may be for some purposes a difference between the capital of a bank and the stock or shares representing the property and assets of the banking corporation, but that ''bank stock,'' ''bank shares,'' shares of stock,'' ''capital stock,'' ''shares of capital stock,'' and other similar expressions have the same meaning commonly and technically. That is, there may be for some purposes a technical difference between capital and stock, but stock is stock for all purposes. The statute says that such interest in real estate ''shall not be considered or assessed as part of the capital stock for purposes of taxation.'' Laws 1915, ch. 108. Is the

word "not" in the statute canceled? Why is it that the supposed technical difference between "capital stock" and "shares of stock" requires that the word "not" shall be disregarded?

What is the difference to the shareholders whether any particular piece of property is taxed to the bank, or in the shares of stock? I suppose it is still true that the shares of stock represent all of the assets, real and personal, of the bank, and the shareholders own the bank and all of its property, so that, if any article of property is injured or taxed, the loss falls upon the shareholders. If property then is taxed to the bank, and its value is also included in the shares that are assessed to the stockholders, they suffer taxation twice on the same valuation. This property is assessed in the county where the land lies. If the banking business is in a distant county, the assessor must still assess the shares of stock and now must include this property in its valuation.

I am afraid that it is not made clear which assessor has jurisdiction. They might both assess the mortgage interest, but, of course, this is not intended, as that would be triple taxation. There are two distinct methods of assessing banks. If banks or shares of banks are assessed upon their tangible property only, and their franchise to do business given them by the state is not included, some courts have intimated that if we tax their shares of stock which include all property and also tax real estate to the bank, if the value so doubly taxed is not too great, the bank will after all not be paying to the state more than a reasonable tax on the real value of the franchise and the value of the property of the bank. Some of the states tax upon that theory, and the federal statute allows them to so tax national banks, if they tax their state banks in that way. This is all that there is to the federal statute upon the subject of taxing shares of national banks by states. Our state has adopted and con-

tinually practiced a more equitable plan. The franchise must be valued by the assessor in valuing the shares for assessment. The banks are required to furnish information for that purpose. They must return the amount of capital, the dividends received thereon, reserve, etc., from which the assessor must find the value of the right to do a banking business and the protection of such business by the state. There is no occasion in our state to resort to double taxation or any subterfuge to get even on that score. It is not necessary "to say that any of the property of the bank shall not be 'considered at all.'" But it is fair to say that any interest in real estate shall be taxed in the county where the land is, and that such interest shall not be included in or deducted from the shares of stock, which include the franchise and all tangible property represented by and included in such shares.

It might be desirable to explain whether it is intended to revert to the old practice before the statute of 1911 was enacted to "prevent double taxation on encumbered property in the state." It is said that we are committed to the rule that, when "mortgages were taxed to the bank as real estate in another county, * * * the deduction must be made." But, if the mortgagor has agreed to pay the tax on the mortgage interest, it must also be taxed to the shareholders. In that case the money loaner would add the tax to the interest charges and in that way the borrower would pay it twice. He would gain nothing by agreeing to pay the tax, and of course would not make such agreement. Would this bring us back to the old way of double taxation of the debtor, or would it merely prevent borrowing from banks and similar institutions, and yet enable the debtor to obtain his money to finish paying for his farm from private parties who will be more favorably situated to make such loans?

The majority opinion says that in *First Trust Co. v. Lancaster County*, 93 Neb. 792, 795, "we held that,

mortgage securities being declared real estate, the assessor, in arriving at the true value of the shares of stock, should deduct from the total valuation of the (shares of) capital stock the amount of such securities held by the bank." And, in the recent case cited, *City Trust Co. v. Douglas County,* 101 Neb. 792, it is held that the mortgage interest is real estate if the mortgagee is to pay the tax thereon, and, being then real estate, it must not be taxed as a part of the shares. And this present decision requires the assessor to deduct mortgages of real estate in assessing shares of stock if the bank is to pay the tax thereon. This, I suppose, is because such mortgage interests are real estate; there could be no other reason. Is it really intended to decide that a conditional deed will convey real estate if one party is to pay the tax upon the property conveyed, but if the other party is to pay the tax then the property conveyed is not real estate?

We all understand that, "in assessing shares of stock for taxation, everything that enters into value must be included, unless it has been separately assessed." But if the interest in land conveyed by a mortgage is real estate when the tax thereon is paid by one of the parties to such conveyance as well as when it is paid by the other party, then the interest we are considering is real estate. This, we have now three times decided. And, if the assessor shall "assess the mortgage interest and the value of the real property above the mortgage interest separately," where the land is, though in a far distant county, and cannot assess it in any other manner, is it separately assessed? What is meant by the statement that, "In so deciding, we say nothing as to how mortgage securities should be assessed for taxation?" when it is also said, "It is the shares of stock which are being assessed?" Is the share of stock something distinct from value? We have heretofore supposed that it was the value of the share that was being assessed. If the value of real estate is

included in the assets of the bank, as shown upon its books, then the total value of the shares is not assessed at all, but the value of such real estate which has already been assessed is deducted from the book value of the assets, and it is the remaining value of the shares that is assessed. To comply with the statute, real estate securities must be kept in an account by themselves, and must not be mingled with general assets, and therefore are not included in nor deducted from the general assets for taxation.

A new principle is introduced into our law by the decision that "the corporation's right to resist taxation upon its mortgage securities, contrary to the mortgage tax statute, if it were attempted, is one thing; the right of an individual shareholder to resist taxation on his shares of stock, according to true value, is an altogether different thing." Does the shareholder not own the "mortgage securities?" Does he own the banking house? Does he own anything but a piece of paper? The fiction that the shares of stock can be assessed at their full value, which included all property of the corporation of whatever nature, and certain specified articles of property may also be assessed again to the bank, has not been allowed in any jurisdiction except when the value of the franchise or other valuable rights have not been supposed to be included in the general value of the property and assets. This has in some places been used as a subterfuge to get even with the banks. Heretofore our state has never resorted to such practice. The assessor, regarding the reserve, etc., and especially the net earnings and the dividends, can make a fair estimate of the value of the franchise, etc., and must include such value as value to be assessed. The value of the franchise is not deducted from the book value of the assets, but other property separately assessed is either not included in the book value of assets, or, if it is mingled with the value of the assets generally, it is deducted before assessing the

shares, and it is only the remaining value that is assessed.

Why say, "In legal contemplation, it is the shareholder, and not the bank, which is being taxed," when we know that all taxes, whether nominally assessed against the shares or against the bank, must be borne by the shareholders?

Deciding that "we leave banks and individuals, as holders of mortgage securities, upon the same footing," means, I suppose, either that individuals who hold mortgage interests in lands must pay taxes thereon, although the mortgagor pays taxes on the entire value of the land, or else it means that the statute which requires that such interests must be assessed in a distant county where the land is, and so pay local as well as general taxes, and that such interests "shall not be taxed in any other manner," is void as to banks. But, if the latter, how will it be with individuals? Will they be taxed on such securities in the county where they reside, or in a distant county where the land is? This last question is important, as it will be a hardship to require one who is not a resident of a city to pay city taxes, if banks are not so required.

So far as I can see, this decision as a whole introduces abstract theories of economy and taxation into our statutes in such a way as to create great confusion, and I cannot concur.